SAM KUDLA *v.* AETNA LIFE INSURANCE COMPANY.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued October 13—decided November 8, 1939.

*Lucius F. Robinson, Jr.,* with whom was *John W. Joy,* and, on the brief, *Jacob Schwolsky,* for the appellant (plaintiff).

*Olcott D. Smith,* for the appellee (defendant).

JENNINGS, J. The plaintiff, a judgment creditor under General Statutes, § 4231, brought suit on a liability

policy issued by the defendant to the Whitney Manufacturing Company. The defendant claimed that the plaintiff could not recover because of exceptions in the policy and its contention was sustained by the trial court.

The facts were not in dispute. They are thus concisely stated in plaintiff's brief: The plaintiff and Pignone were both employees of the Whitney Manufacturing Company. On November 10, 1933, together with four other employees, they were engaged, in the course of their employment, in taking bags of sand from a freight car standing on a railroad siding on the company's premises located in its yard and conveying them in a Mack truck owned by the company and used for the transportation of material and merchandise to the company's storehouse. The place of loading and unloading and the route taken by the truck were all in and upon the company's land, the distance traveled being only two hundred and fifty feet. Pignone operated the truck with the consent of his employer. One of the employees rode beside him in the driver's compartment. The plaintiff with the remaining three rode upon the bags of sand in the rear of the truck. Their riding thereon was to facilitate and expedite the process of loading and unloading. On one of the trips the plaintiff, with several bags of sand, was thrown from the side of the truck due to Pignone's negligence. In a suit against Pignone brought to the Superior Court, plaintiff recovered a judgment for $3500 and costs, which, on appeal to the Supreme Court of Errors, was affirmed. (*Kudla* v. *Pignone,* 119 Conn. 204, 175 Atl. 469.) The plaintiff also obtained compensation from his employer, the Whitney Manufacturing Company, being awarded by the compensation commissioner $85 for seventeen weeks' disablement, approximately $200 for medical expenses and an addi-

tional sum of forty-odd dollars which has not been paid.

At the time of the plaintiff's injuries aforesaid, there was in force a policy of insurance issued by the defendant insurance company to the Whitney Manufacturing Company.

In so far as is necessary to present the questions arising on this appeal, the policy contained the following terms:

"AETNA LIFE INSURANCE COMPANY . . . does hereby insure the Assured named herein, subject to the terms and conditions herein and endorsed hereon, . . . against the following risks:

"CLAUSE FIVE—LIABILITY FOR PERSONAL INJURY. Loss and/or expense resulting from claims for damages upon the Assured on account of bodily injuries . . . accidentally suffered or alleged to have been suffered by any claimant or any other person (except employees of the Assured while engaged in operating or caring for an automobile in the course of employment of the Assured, or injured in the course of employment in the business of the Assured or entitled to benefits under any Workmen's Compensation law) by reason of ownership or operation of the described automobile. . . .

"GENERAL CONDITIONS. The following general conditions are applicable to attached policies . . . :

"IV. ADDITIONAL INTERESTS. While any automobile covered hereby, is being used with the consent of the Assured . . ., the provisions of this policy with respect to claims on account of damage to property of others or injury to the person . . . of others shall inure to the benefit of any person operating or riding in, and to any person, firm or corporation responsible for the operation of said automobile; . . .

"IX. LIMITATION OF USE. The Company shall not be liable under any clause of this policy for any loss or

damage occurring while the automobile described herein is . . . (f) Nor shall the Company be liable for injuries and/or death of any person caused directly or indirectly by reason of the transportation of such person in any commercial type automobile described herein as used to transport materials or merchandise, unless such person at the time of the accident was riding in the driver's compartment."

Since Pignone was using the automobile with the assent of the assured, the plaintiff is covered by general condition IV unless excluded by the exception in clause V of the insuring clause or IX (f) of the general conditions.

The plaintiff claims that he was not being transported within the meaning of clause IX (f) for two reasons. He claims, first, that the word transportation must refer "to something other than might be necessary in performing the uses for which a commercial type motor vehicle is intended." He then claims that because the freight car and storehouse were both on the property of the Whitney Manufacturing Company, the plaintiff was not being transported from one to the other when he rode on the truck rather than walking. These are strained and unnatural constructions. The cases cited are not convincing. Some of them concern the violation of criminal laws against the transportation of liquor and others are appeals from the interstate commerce commission involving the question whether certain railroads are common carriers or mere plant facilities. An examination of the numerous cases cited in Words & Phrases where the word transport as used in the statutes and contracts has been construed, shows that it has been given various meanings, dependent upon the intention to be effected or the evil to be prevented, and none of them present the precise situation before us. In *Wilson & Adams Co.* v. *Pearce*,

265 N. Y. S. 624, the word transportation was said to include the loading of materials in supply yards and unloading at the points of construction, and in *Magnolia Warehouse & Storage Co.* v. *Davis & Blackwell,* 108 Tex. 422, 426, 195 S. W. 184, the word transport was construed to include the loading of dirt to be excavated upon cars in which it was to be carried away, the court stating: "We think this word is to be used according to its signification, in which sense it means to convey from one point to another without reference to the distance between the points." See also *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, 203, 5 Sup. Ct. 826, 29 L. Ed. 158; *Dixie Die Co.* v. *United States,* 24 Fed. (2d) 804, 805.

There is no reason to hold that the word transportation is used here in other than its common meaning. The accident which occurred is a perfect illustration of the additional hazard excepted from the policy. The bodies of trucks are constructed for the transportation of materials, not persons. "The word *transport,* correctly interpreted as well as in its ordinary acceptation, means to *carry,* to *convey." United States* v. *Sheldon,* 2 Wheat. (15 U. S.) 119, 120. The plaintiff was being carried and conveyed from the freight car to the storehouse and is within the exception.

The conclusion that the plaintiff is precluded from recovery because of this exclusion clause makes it unnecessary to consider whether he comes within the exception of the insuring clause.

There is no error.

In this opinion the other judges concurred.